## WILLIAM M. LARRABEE
### *v.*
## B. HUTCHINS BADGER.

1. AGENT — *liability of, to his principal.* Where one person receives money from another, for the purpose of purchasing a certain number of shares of railroad stock, and purchases the stock with this money, in his own name, and afterward sells the stock and applies the proceeds to his own use, and upon demand to deliver the stock or refund the money, refuses so to do, it was at the option of the party furnishing the money to sue for a non-delivery,

or for the money so advanced, and the relation between the parties is that of principal and agent.

2. DAMAGES—*measure of*—*and herein of the distinction in cases.* Where an action is brought on a contract to deliver chattels or stocks, the market value of the article at the time of delivery is the measure of damages. But, where the action is for money which had been advanced to a person as an agent, to be invested by him in a particular way, which investment he made, but in his own name, and afterward disposed of it, and appropriated the proceeds to his own use, and without authority, the measure of damages is the amount of money advanced with interest.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The facts in this case are sufficiently stated in the opinion.

Mr. E. W. EVANS, for the appellant.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit in the Cook Circuit Court, brought by William M. Larrabee against B. Hutchins Badger, to recover back $2,000 and the interest thereon, which the plaintiff had intrusted to the defendant to purchase for him stock of the Chicago and Alton Railroad company. The money was advanced by the plaintiff, on the 17th of March, 1866. The order was to purchase with the money 200 shares of the stock for the plaintiff, to be purchased by the defendant in the city of New York.

On the 19th of March, 1866, the defendant notified the plaintiff, by letter of that date, that he had bought for him, for his account and risk in New York, 200 shares of Chicago and Alton common, at 89⅛.

On the 4th of April following the plaintiff made a demand on the defendant for this stock, and on the refusal of the defendant to deliver it to him, the plaintiff then demanded a return of his money. This the defendant refused, saying he had failed and had made an assignment and was unable to comply with the demand.

It appeared from the testimony of Samuel C. Smith, who had been the bookkeeper of the defendant, and called as a witness by him, that he knew the fact of this advance by plaintiff to defendant of $2,000, and of the defendant's buying the stock, which was done by telegraph in New York in the name of, and for the benefit of the defendant, but passed on the defendant's books to the credit of the plaintiff at the time of the purchase. On the 3d of April the defendant made an assignment; the witness was appointed assignee, and had taken charge of all the assets of the defendant, which consisted chiefly of office furniture. The witness further stated, that, on the 4th of April, 1866, the stock of this road had depreciated in the market from the price paid for it when bought by the defendant in the previous March, and that the market value, on the 3d of April, of the 200 shares, was about $936.

This witness stated on his cross-examination, that, on the 3d or 4th of April the 200 shares had been sold in New York, and the proceeds, whatever they were, placed to the credit of the defendant; the sale was made by telegram to the stock broker in New York, sent from Chicago on the 3d of April; that the plaintiff's name nowhere appeared on the books of the broker in New York, but that the whole business was done in the name of the defendant, which was the customary way of doing business of that character by stock brokers in Chicago.

On these facts, the court trying the cause without a jury found for the plaintiff and assessed his damages at $926.

A motion for a new trial was made by the plaintiff and overruled by the court, to which the plaintiff excepted, and he brings the record to this court by appeal to reverse the judgment entered on this finding.

We have not been favored with any argument on behalf of appellee, and decide the case on the law as we understand it without any aid from that quarter.

We understand, from the argument of appellant, that this case had been considered analogous to that of *Smith et al.* v. *Dunlap*, 12 Ill. 184.

That case is wholly unlike this. Here, the plaintiff had advanced $2,000 to the defendant, with which the defendant was to buy two hundred shares of stock in the Chicago and Alton railroad, for the plaintiff. The proof is, the defendant bought the stock in his own name and had the same placed to his credit in New York, and that the name of the plaintiff did not appear in the transaction, and that defendant sold this stock and appropriated the proceeds to his own use, and all without the knowledge or consent of the plaintiff.

All the cases referred to by the court, in the case in 12 Illinois, were brought for breach of contract, for the non-delivery of the article contracted for. Here, the demand made by the plaintiff on the defendant was in the alternative, to deliver the stock or refund the money advanced with which it was purchased. This action is, substantially, not for a breach of contract in failing to deliver a certain number of shares of stock, but for the money advanced for that purpose. Under the facts proved, it seems to us, that the plaintiff had this election, either to sue for the failure to purchase in plaintiff's name, and the non-delivery to him of the stock, or to demand that his money should be refunded to him with interest. The latter course was adopted, and this suit is brought for the money, and the measure of damages which should be meted out to the plaintiff is, the money he advanced, plus the interest thereon. The facts do not show a contract for the purchase and delivery of stock, but an undertaking on the part of the defendant that he will buy two hundred shares of stock for the plaintiff, and with the plaintiff's money. This is the whole extent of the contract; and, on failure to buy for plaintiff, and by appropriating the money to his own use, justice would seem to demand, on his failure to buy the stock as instructed, the defendant should refund the money with interest.

This distinction pervades all the books: that, where the action is brought on the contract to deliver chattels or stocks, the market value of the article, at the time of delivery, is the measure of damages; but, where it is brought for the money

advanced, the amount of money and the interest thereon is the measure of damages.

The position this defendant occupies in relation to the plaintiff most clearly is, not that of a vendor of stock to plaintiff, but as an agent, who has received of the plaintiff $2,000 to invest for him in a particular way. By executing the trust, the defendant would have discharged himself from liability; but it was no execution of it to buy and sell the stock in his own name and for his own use without authority, and he must now account for the $2,000. The measure of damages is the money advanced, and the interest thereon, under the facts as they appear in this record.

The judgment of the Circuit Court is reversed and the cause remanded for other proceedings consistent with this opinion.

*Judgment reversed.*